```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 11/89/16             │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AARON WADE JABOT,
              Plaintiff,      :

                        :      **OPINION AND ORDER**

v.                     :

                        :      14 CV 3951 (VB)

MHU COUNSELOR MS ROSZEL, MHU  :
COUNSELOR MR BARTA, DR Q, MHU A.  :
HENNESSEY, MHU MS H, MHU C.  :
WEEDEN, MHU MS. SULLIVAN, MHU  :
NURSE LA DUE, MHU NURSE S, DR. M  :
DRE, DR. B, MHU NURSE U,  :
              Defendants.   :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Aaron Wade Jabot, proceeding pro se and in forma pauperis, brings this action

under 42 U.S.C. § 1983, challenging his mental health treatment, his conditions of confinement,

his alleged denial of access to courts, the alleged violation of his due process rights, and the

conduct of defendants Katherine Roessel, Adam Barta, Megan LaDue, Crystal Weeden, Anne

Marie Hennessey, Shannon Sullivan, Dr. Q, Ms. H, Nurse S, Dr. M Dre, Dr. B., and Nurse U.,

employees of the New York State Office of Mental Health ("OMH"), while incarcerated at

Green Haven Correctional Facility ("Green Haven"), Downstate Correctional Facility

("Downstate"), and Elmira Correctional Facility ("Elmira").

    Now pending is a Rule 12(b)(6) motion to dismiss the amended complaint filed by

defendants Roessel, Barta, LaDue, Weeden, Hennessey, and Sullivan.[1] (Doc. #47).

    For the reasons set forth below, the motion is GRANTED.

    The Court has jurisdiction under 28 U.S.C. § 1331.

---

[1]    Dr. Q, Ms. H, Nurse S, Dr. Dre, Dr. B., and Nurse U have not been served.

Copies Mailed/Faxed
Chambers of Vincent L. Briccetti



**BACKGROUND**

I.  Factual Allegations

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint as true, and draws all reasonable inferences in plaintiff's favor.[2]

Plaintiff alleges that while at Green Haven, defendants Roessel and Barta denied plaintiff effective medical care by not giving him Xanax or Klonopin.  Plaintiff claims he informed defendants Roessel and Barta he needed Xanax or Klonopin to treat his anxiety in order to testify at his criminal trial.  Plaintiff further claims defendants failed to help him in retaliation for filing complaints and grievances.  Plaintiff makes the same allegations against defendants Weeden, Sullivan, Hennessey, and LaDue of Downstate.

Plaintiff claims that while on "special watch," unidentified mental health staff members at Green Haven and Downstate denied plaintiff showers and the ability to brush his teeth on an unspecified number of occasions.  (Am. Compl. 3).  Plaintiff also claims he was denied mental healthcare while on "special watch."

Plaintiff further alleges Downstate mental health staff violated his right to receive a fair misbehavior report hearing.  Defendant Weeden allegedly gave confidential testimony at plaintiff's "Tier III" disciplinary hearing out of plaintiff's presence and against his objection. (Am. Compl. 6).   Plaintiff claims he "was not in the right state of mind," and mental health staff refused to adjourn his hearing until he was fit to represent himself effectively.  (Am. Compl. 6– 7).  Plaintiff further alleges this mistreatment was in retaliation for filing grievances.  Plaintiff

---

[2]      In addition to plaintiff's amended complaint (Doc. #18) and opposition brief (Doc. #54), the Court is in receipt of correspondence from plaintiff dated March 24 (Doc. #51), March 27 (Doc. #52), and April 4, 2016 (Doc. #53).  In his March 24, 2016 letter, plaintiff asked the Court to appoint him counsel.  On March 30, 2016, the Court denied this request.  (Doc. #51). Plaintiff's submissions otherwise generally repeat the allegations set forth in his amended complaint and opposition brief.

claims he was found guilty at the hearing and received 190 days in the special housing unit ("SHU").

Plaintiff alleges he continued to be denied "help" at Elmira.  (Am. Compl. 7).

Plaintiff claims the alleged abuses led to additional mental health issues, causing him to go days without eating.  The abuse led him to try to kill himself by banging his head against the wall, eating rotten food, and eating unhealthy foods with high sodium content.  Plaintiff claims being on special watch inhibited his ability to sleep, and caused him to not trust anyone and feel that everyone was out to get him.

II.   Procedural History

Plaintiff filed his complaint on May 28, 2014, alleging he was denied necessary medication—Xanax and Klonopin—in violation of his constitutional rights.  On July 7, 2014, the Court ordered plaintiff to amend the complaint.  (Doc. #4).  The order to amend explained that if plaintiff chose to amend his complaint, he must state facts that would establish he had a "serious medical condition" and that it was met by defendants "with deliberate indifference," beyond mere negligence or disagreement regarding matters of medical judgment.  See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011).  The order to amend further directed plaintiff to state facts that would establish how each named defendant personally participated in the deprivation of his rights.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

On January 30, 2015, plaintiff filed the amended complaint that is the subject of the motion to dismiss.  (Doc. #18).

Defendants move to dismiss the amended complaint on the grounds that (i) plaintiff fails to state a claim of constitutional proportion; (ii) plaintiff fails to allege the personal involvement of defendants Hennesey, Weeden, Sullivan, or LaDue in any denial of medical treatment;

3

(iii) plaintiff fails to allege non-conclusory facts to support his retaliation claim against defendants Hennessey, Weeden, Sullivan, and La Due; and (iv) each defendant is entitled to qualified immunity.

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges

4

civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir.

2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court

"invent factual allegations" plaintiff has not pleaded.  Id.

II.    Eighth Amendment Claims

Plaintiff alleges Eighth Amendment violations under two distinct theories:  inadequate

medical treatment and conditions of confinement.

A.    Inadequate Medical Care

To assert a claim for constitutionally inadequate medical care, plaintiff must allege "acts

or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has both an objective and a subjective

component:  plaintiff must plead facts showing (i) the alleged deprivation of medical care is

"sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of

mind."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts.  "The first inquiry is whether the prisoner

was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is

required.  Id. at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)).  In the Second

Circuit, it is well-established that mental health care "is an integral part of medical care" and is

required to be provided to prisoners.  Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989).

"Second, the objective test asks whether the inadequacy in medical care is sufficiently serious"

by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy

has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

    1.    Objective Component

Plaintiff's claims fail on the first subpart of the objective component because he does not plausibly allege he was deprived of reasonably adequate medical care. A propensity to attempt suicide or harm oneself is indisputably a serious medical condition, and panic attacks and anxiety may be serious as well. But plaintiff does not allege defendants denied him medical care for his mental illness altogether.[3] Instead, plaintiff alleges he was denied "effective" medical care by not being given his preferred medication of Xanax or Klonopin. (Am. Compl. 3). Plaintiff also alleges defendants placed him on "special watch."

Neither denial of Xanax or Klonopin, nor placing plaintiff on "special watch," constitutes a sufficiently serious deprivation. Although plaintiff takes issue with his treatment at Green Haven and Downstate, insisting that specific medication was needed, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Plaintiff does not suggest any reason why Xanax or Klonopin was the only acceptable treatment for his anxiety and panic attacks,[4] nor does he allege he was denied

---

[3]    Plaintiff claims he was denied mental healthcare while in SHU at Elmira. However, plaintiff does not provide any further facts supporting this claim, nor does he connect any named defendant with this claim.

[4]    In his opposition brief, plaintiff claims he has "tried many mental health medications for panic attacks and none of them work." (Pl.'s Opp'n 13–14). Even accepting as true plaintiff's unsupported contention that treatment with Xanax or Klonopin would be more effective than the treatment he actually received, he still fails to state an Eighth Amendment claim. Plaintiff is not entitled to the best treatment available; he is merely entitled to "reasonable care." See Salahuddin v. Goord, 467 F.3d at 279. Plaintiff fails to allege plausibly that he has received less

treatment for his mental health conditions altogether.  Moreover, the harm allegedly suffered as a result of the inadequate medical care plaintiff received—the prospective inability to testify effectively at his criminal trial—does not give rise to a constitutional injury.

### 2.  Subjective Component

The amended complaint also fails the subjective component because plaintiff does not plausibly allege defendants' deliberate indifference to his mental illness.  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law.  This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result[,] and entails more than mere negligence."  Salahuddin v. Goord, 467 F.3d at 280 (quoting Farmer v. Brennan, 511 U.S. at 839–40).

Because plaintiff's claims that he suffers from anxiety and panic attacks lack any further factual context (such as dates of complaints and treatment, descriptions of observable symptoms, or results of diagnostic tests administered to him), "they do not supply a basis for concluding that the defendants knew facts that would have alerted them to [plaintiff's] need for treatment."  Morales v. Mackalm, 278 F.3d 126, 133 (2d Cir. 2002).

Moreover, plaintiff fails to plead facts that tend to show defendants acted "with a sufficiently culpable state of mind."  Salahuddin v. Goord, 467 F.3d at 280.  The amended complaint does not allege defendants knowingly and intentionally rendered improper treatment, or that they knew of and disregarded a substantial risk of serious harm to plaintiff.  Plaintiff's

---

than reasonable care, and therefore his deliberate indifference to serious medical needs claim must be dismissed.  Furthermore, plaintiff's letter dated April 4, 2016 (Doc. #53), attaches a letter dated August 14, 2013, from Raju A Sadal, RPA-C of Broad Street Medical Group.  In his letter, Sadal explains that a medication called Effexor XR had been prescribed to plaintiff for reported depressive and anxiety symptoms, and that the medication apparently caused severe agitation and mania in plaintiff.  Sadal then prescribed plaintiff a mood stabilizer called Lamictal.  Sadal states it was possible plaintiff is bipolar, but further evaluation was necessary.  Nothing in Sadal's letter suggests plaintiff required treatment by Xanax or Klonopin.

claim that he informed defendants Roessel and Barta he could not take the stand at his criminal trial without Xanax or Klonopin is insufficient to meet this standard. The bare allegation that defendants Hennessey, Weeden, Sullivan, and LaDue denied plaintiff Xanax or Klonopin is also insufficient to satisfy the subjective component of a deliberate indifference claim.

Plaintiff further asserts he tried to kill himself by slamming his head against the wall, eating rotten food, and eating food with high sodium content, but he does not allege that defendants Hennessey, Sullivan, or LaDue were aware of this behavior.[5]  Plaintiff does not allege any injuries he sustained from slamming his head against the wall. Moreover, eating rotten food and food with high sodium content does not tend to show that officials should have been "aware of an obvious, substantial risk to inmate safety" or that "prison officials, acting with deliberate indifference, exposed [plaintiff] to a sufficiently substantial risk of serious damage to his future health." See Farmer v. Brennan, 511 U.S. at 843 (internal quotation marks omitted).

B.    Conditions of Confinement

Plaintiff alleges that while on special watch, he was not permitted to shower or brush his teeth on an unspecified number of occasions by unidentified OMH staff. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. at 832 (internal quotation marks omitted). The Eighth Amendment imposes an obligation on prison officials to provide "humane conditions of confinement" including "adequate food, clothing, shelter, and medical care." Id. To establish an Eighth Amendment violation on the basis of inhumane prison conditions, a prisoner must allege both that

---

[5]      In the amended complaint, plaintiff does not allege any defendants were aware of this behavior. In his opposition brief, plaintiff claims defendants Weeden and Barta "were very well aware the reason I was hurting myself was because I was not receiving medication that works effectively." (Pl.'s Opp'n 13). However, this claim fails to allege plausibly that defendants Weeden or Barta were aware of plaintiff engaging in conduct that presented an "obvious, substantial risk to inmate safety." See Farmer v. Brennan, 511 U.S. at 843.

"(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (citations and internal quotation marks omitted). As discussed above, "[t]o constitute deliberate indifference, [t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." Id. (citation and internal quotation marks omitted).

The denial of a shower on an unspecified number of occasions fails to state a plausible claim of inhumane conditions of confinement because it is too vague and cursory to withstand a motion to dismiss. Moreover, the temporary deprivation of showers generally does not give rise to an Eighth Amendment violation. See Ford v. Phillips, 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007)[6] (temporary deprivations of property, showers, and recreation do not violate the Eighth Amendment); Cruz v. Jackson, 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (two weeks without showers and unspecified incidents of receiving rusty drinking water does not satisfy the objective component of an Eighth Amendment claim); Hamilton v. Peters, 919 F. Supp. 1168, 1173 (N.D. Ill. 1996) (denial of regular showers for twenty-eight days does not state an Eighth Amendment claim).

Similarly, plaintiff fails to show that denial of the ability to brush his teeth for an unspecified period of time rose to the level of deliberate indifference to his health or safety. Temporary deprivations of toiletries, such as a toothbrush or toothpaste, generally do not violate the Eighth Amendment. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable—does not pose such

---

[6]   Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

an obvious risk to an inmate's health or safety to suggest that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference'") (quoting <u>Farmer v. Brennan</u>, 511 U.S. at 837) (alterations in original); <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir. 1988) (denial of soap, toothbrush, and toothpaste for ten days did not violate the Eighth Amendment); <u>Fernandez v. Armstrong</u>, 2005 WL 733664, at *5 (D. Conn. Mar. 30, 2005) (up to sixteen-day deprivation of toothbrush, toothpaste, soap, and shampoo did not violate the Constitution).

Plaintiff further alleges he was not given medical care for rashes he developed as a result of not showering. This also fails to state a claim of deliberate indifference to his health or safety because it is not sufficiently serious. <u>See, e.g.</u>, <u>Ford v. Phillips</u>, 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("a minor bruise, slight bleeding and scratches are not injuries that may produce death, degeneration or extreme pain"); <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (cut finger with "skin ripped off" is insufficiently serious); <u>Bonner v. N.Y. City Police Dep't</u>, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (inability to close hand due to swelling insufficiently serious to constitute Eighth Amendment violation).

III.    <u>Retaliation Claims</u>

Plaintiff alleges defendants Roessel and Barta denied him Xanax and Klonopin in retaliation for filing grievances. Plaintiff further claims defendants Hennessey, Weeden, Sullivan, and LaDue violated his constitutional rights by taunting and mistreating him in retaliation for filing grievances. To state a claim for retaliation sufficient to withstand a motion to dismiss, plaintiff must allege facts demonstrating "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a

causal connection between the protected speech and the adverse action." <u>Dolan v. Connolly</u>, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted).  The protected speech must be "a substantial or motivating factor for the adverse actions taken by prison officials." <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted).  Retaliatory acts that fail to meet this standard are "simply <u>de minimis</u> and therefore outside the ambit of constitutional protection." <u>Id</u>.  Courts tailor the inquiry "to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." <u>Id</u>. (internal quotation marks omitted).

Because of the "ease with which claims of retaliation may be fabricated," the Court "examines prisoners' claims of retaliation with skepticism and particular care." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).  Temporal proximity between an inmate's grievance and adverse action and evidence of prior good behavior may provide circumstantial evidence of retaliation. <u>Colon v. Coughlin</u>, 58 F.3d at 872.

Plaintiff adequately alleges the first prong of a retaliation claim—namely, his filing of grievances.  It is well-established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983." <u>Dolan v. Connolly</u>, 794 F.3d at 294

(internal quotation marks omitted).

Plaintiff fails, however, plausibly to allege defendants took adverse action against him as

a result of his grievance filings.   The amended complaint asserts plaintiff received a misbehavior

report and disciplinary hearing, but plaintiff does not allege the disciplinary hearing was a result

of filing grievances, or that plaintiff had an otherwise good behavior record—i.e., that the

disciplinary hearing was unwarranted.[7]

Plaintiff also contends defendants "taunted" and "mistreated" him, and defendants

"black-balled" him for filing grievances.   (Am. Compl. 5–7).   "Insulting or disrespectful

comments directed at an inmate generally do not rise to [the] level" of an actionable claim.

<u>Davis v. Goord</u>, 320 F.3d at 353 (2d Cir. 2003); <u>see also</u> <u>Morales v. Mackalm</u>, 278 F.3d 126, 131

(2d Cir. 2002) (calling plaintiff names in front of other inmates does not amount to actionable

conduct); <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001) (calling inmate a "rat" is not a

constitutional violation).

Plaintiff fails to make specific, detailed, and non-conclusory factual allegations

supporting any causal connection between his grievance filings and the alleged conduct of the

defendants.   Plaintiff claims Roessel and Barta "made it very clear to me they won't help me

because of the many complaints I have filed."   (Am. Compl. 2).   "Even at the motion to dismiss

stage, the inmate must allege more than his personal belief that he is the victim of retaliation.

Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from

which retaliation may plausibly be inferred."   <u>Walker v. Schriro</u>, 2013 WL 1234930, at *8

(S.D.N.Y. Mar. 16, 2013) (internal quotation marks omitted).   Here, plaintiff has failed to allege

---

[7]     In his opposition brief, plaintiff states the reason he received a Tier III disciplinary hearing was because he refused a direct order.   (Pl.'s Opp'n 9).

temporal proximity, a prior good disciplinary record, a lack of justification for his disciplinary

hearing, or any specific statements by defendants relating to their motivation.  Accordingly,

plaintiff fails to state a retaliation claim against any defendant.

IV.     First Amendment Access to Courts Claim

        Plaintiff alleges the denial of medication prevented him from being able to represent

himself adequately and testify at his criminal trial.  "In order to establish a violation of a right of

access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury, i.e., took or

was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"

Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (alteration in original) (quoting Lewis v.

Casey, 518 U.S. 343, 354–55 (1996)).

        Specifically, plaintiff claims he has "public speaking issues" and that without his

medication he becomes anxious and has panic attacks.  (Am. Compl. 2).  Plaintiff contends he

planned to testify at his criminal trial and that without his medication, the jury could find him

guilty because of his demeanor and behavior in front of the jury.  Plaintiff does not allege,

however, that the denial of his preferred anxiety medication actually hindered his ability to

testify at his criminal trial.  Nor does he claim that defendants' behavior caused any prejudice

during his criminal trial.  See Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (to

state an access to courts claim under Section 1983, an inmate "must show that the alleged

deprivation actually interfered with his access to the courts or prejudiced an existing action").

The only consequences plaintiff alleges are hypothetical conjecture and thus, fail to state a

constitutional claim of denial of reasonable access to the courts.[8]

---

[8]     In a letter to the Court dated April 4, 2016 (Doc. #53), plaintiff alleges defendant Barta's
misconduct caused plaintiff to fight with his attorney in a courtroom.  Plaintiff claims he told
Barta, "I feel I have justification to fight with my attorney in the courtroom [and] Barta did not

V.     Fourteenth Amendment Due Process Claim

Plaintiff alleges he was denied due process in the course of his disciplinary hearing because the hearing took place when plaintiff "was not in the right state of mind," and defendants refused to adjourn the hearing.  (Am. Compl. 6–7).  Plaintiff also claims he could not represent himself effectively at the hearing because he was not receiving his anxiety medication, and defendants refused to help him.  Plaintiff further alleges OMH staff testified confidentially over plaintiff's objection at his hearing.  Plaintiff was subsequently assessed 190 days in SHU.

To state a due process claim, plaintiff must plausibly allege "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, (1995)).

No bright-line rule exists to determine at what point a prisoner's confinement in SHU rises to the level of "atypical and significant hardship."  Wilkinson v. Austin, 545 U.S. 209, 223–24, (2005).  Courts consider both the duration and conditions of confinement in determining whether an inmate has suffered atypical and significant hardship pursuant to a disciplinary proceeding.  See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (relevant factors in determining whether inmate endured atypical hardship include "the extent to which the

---

report this matter nor did he place me on special watch."  Id. at 7.  Plaintiff claims if he was on Xanax or Klonopin, he would not have attacked his attorney.  However, these allegations still fail to state an "actual injury."  The case report regarding the attack attached to plaintiff's April 4, 2016, letter states plaintiff attacked his attorney while not in the presence of the jury, the trial continued after the attack with plaintiff's attorney continuing to represent him, and plaintiff's attorney declined to press charges for the attack.

conditions of the disciplinary segregation differ from other routine prison conditions and the

duration of the disciplinary segregation imposed compared to discretionary confinement")

(internal quotation marks and citation omitted).  "Where the plaintiff was confined [in SHU] for

an intermediate duration—between 101 and 305 days—development of a detailed record of the

conditions of the confinement relative to ordinary prison conditions is required to determine

whether the conditions of confinement could be termed atypical or insignificant."  Palmer v.

Richards, 364 F.3d at 64–65 (internal quotation marks and citations omitted).

      To assess the severity of plaintiff's time in SHU, courts consider "psychological effects

of prolonged confinement in isolation," and how the conditions of plaintiff's confinement

compared with the confinement of others in the general population of the same facility.  Colon v.

Howard, 215 F.3d at 231.  Examples of factors courts use include the percentage of the day that

prisoners spend within the cell, hygienic conditions, access to programs, as well as other

conditions that may be applicable to plaintiff's situation.  See, e.g., Welch v. Bartlett, 196 F.3d

389, 393 (2d Cir. 1999) (noting that "far inferior" hygienic conditions in SHU that included

"inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and

infrequent changes of clothes" may permit the finding of atypical and significant deprivation);

see also Ortiz v. McBride, 380 F.3d 649, 653 (2d Cir. 2004) ("showering and other personal

issues, in connection with other circumstances, may constitute an abusive situation").

      Plaintiff alleges he received 190 days of SHU confinement following his disciplinary

hearing.  Plaintiff further claims that while in SHU in Elmira, he received no mental health care.

He also alleges that being in SHU caused him to not sleep, and that he does not receive packages

or visits from his family while in SHU.  (Am. Compl. 9).  In his opposition brief, plaintiff claims

that while in SHU he does not have any recreational time and spends twenty-four hours per day

in his cell.  (Pl.'s Opp'n 11).  However, plaintiff also alleges the reason he is kept in his cell at all hours is because other inmates have threatened to assault him.  Plaintiff claims his isolation in SHU has caused his mental health to deteriorate.  These allegations, taken as a whole, may be sufficient to trigger due process rights.  However, because plaintiff has failed plausibly to allege a violation of due process rights, the Court need not decide this issue.

Where an inmate's liberty interest is implicated, "[b]ecause '[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply."  Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summ. order) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, (1974)).  The procedural due process afforded to a prisoner charged with a violation in a disciplinary hearing consists of: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Williams v. Menifee, 331 F. App'x at 60 (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, (1985)).

The Court concludes plaintiff has failed to allege the disciplinary hearing violated any due process rights that may have been triggered by his SHU confinement.

Plaintiff does not allege he was not given advance written notice of his disciplinary charges, nor does he allege he was not provided with a statement of evidence and reasons for the disposition.

Plaintiff claims OMH staff violated his due process rights by testifying confidentially and outside of his presence.  It is well-established that "it is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate."

16

Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999). "Nor does an inmate have a constitutional right of confrontation." Id. Specifically, hearing officers may consider testimony of OMH treatment providers outside the presence of an inmate with mental health issues. See Powell v. Coughlin, 953 F.2d 744, 747, 749 (2d Cir. 1991) (OMH policy allowing disciplinary hearing officers to confer confidentially with OMH staff regarding treatment provided to inmate who is the subject of disciplinary hearing pursuant to the New York Mental Hygiene Law is constitutional). Thus, no due process claim can be premised on the alleged questioning of a witness outside of plaintiff's presence.

Plaintiff also claims that because he was having conflict with OMH staff, they could not provide "fair" testimony at plaintiff's disciplinary hearing. This claim fails because plaintiff does not have the right to be free of "unfair" testimony. Mitchell v. Senkowski, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process.").

Prisoners are entitled to have their disciplinary charges reviewed by an unbiased hearing officer. Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994). Claims of hearing officer bias are common in Section 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed. See, e.g., Vogelfang v. New York State Dep't of Corrections, 2010 WL 3895493, at *1 (S.D.N.Y. Oct. 4, 2010). "Administrators serving as adjudicators are presumed to be unbiased." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). Furthermore, "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "the degree of impartiality required of prison officials does not rise to the level of that required of judges generally." Id. An inmate's own

17

subjective belief that a hearing officer was biased is insufficient.  See Francis v. Coughlin, 891

F.2d 43, 47 (2d Cir. 1989).  Here, plaintiff has merely stated conclusory and subjective

statements regarding the defendants' alleged bias.  Plaintiff fails to allege how defendants were

biased against him.  Therefore, plaintiff fails to state a due process violation claim based on the

fairness of his disciplinary hearing or any bias on the part of defendants.

   Plaintiff further claims he was denied due process because defendants would not adjourn

his disciplinary hearing when plaintiff "was not in the right state of mind" and could not

adequately represent himself.  (Am. Compl. 6–7).  These allegations fail to state an actionable

due process claim.  The Court is not aware of any authority to support the proposition that

plaintiff had a right not to proceed with a disciplinary proceeding while incapacitated.

Moreover, plaintiff's claims are conclusory and fail to state any specific facts regarding his

alleged incapacity, or how such incapacity impacted his ability to call witnesses or present

documentary evidence during his disciplinary hearing.  The Supreme Court has consistently held

that prison officials must be afforded flexibility and discretion in overseeing hearings.  See, e.g.,

Wolff v. McDonnell, 418 U.S. at 566.  Thus, plaintiff's claim that he was "not in the right state

of mind" to represent himself at his disciplinary hearing fails to state a claim of violation of due

process rights.

VI.  Leave to Amend

   A district court ordinarily should not dismiss a pro se complaint for failure to state a

claim "without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112

(2d Cir. 2000) (internal quotation marks omitted).  A court must grant leave to amend "unless the

court can rule out any possibility, however unlikely it might be, that an amended complaint

would succeed in stating a claim." <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999).

Here, plaintiff has already amended his complaint once pursuant to the Court's order to amend. (Doc. #4). Having already granted plaintiff leave to amend his deliberate indifference to medical needs claim, and finding no basis in the amended complaint, liberally read, upon which plaintiff might state a valid claim, the Court declines to grant plaintiff leave to amend the deliberate indifference to medical needs claim again. In short, further repleading of this claim would be futile.

As to plaintiff's other claims, even liberally construed, the amended complaint does not contain allegations suggesting plaintiff has valid conditions of confinement, retaliation, access to courts, or due process violation claims that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112. On the contrary, the Court finds that further repleading would be futile because the problems with plaintiff's claims are substantive, and supplementary or improved pleading will not cure the deficiencies of the amended complaint. <u>See id</u>.

Accordingly, the Court declines to grant plaintiff leave to amend again.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #47) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: November 28, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge